**WO**                                                                              LMH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald R. Perry, | ) No. CIV 04-2842-PHX-JAT (VAM) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Mark Post, et al., | ) |
| Defendants. | ) |

In this civil rights action brought by a former inmate, Defendants filed an Amended Motion for Summary Judgment (Doc. #24). Plaintiff responded, and Defendants replied (Doc. ##34, 38). The Court will grant the motion in part and deny it in part.

**I. Procedural History**

In his Complaint, Plaintiff brought three counts for relief arising from his arrest on July 11, 2004, in the City of Phoenix. After screening, the Court dismissed Count III, which alleged that a false report was filed against Plaintiff, because the claim was premature as it implied the invalidity of his conviction for possession of drug paraphernalia. The remaining counts are claims that Plaintiff's Fourth Amendment rights were violated by the use of excessive force during his arrest. Defendants Mark Post and Paul Kim, City of Phoenix police officers, were required to answer these claims (Doc. #4).

Defendants answered and subsequently moved for summary judgment. In their motion, they contend that as to the claims against them in their official capacities, there is no

evidence to show that they were acting pursuant to a policy, custom, or practice of a municipality (Doc. #24).  They also argue that they are entitled to qualified immunity on Plaintiff's allegations that (1) his arrest lacked probable cause, (2) during the arrest, he was tackled and his head was banged on the curb, and (3) dragging Plaintiff into an ant hill and taunting him was unconstitutional (Id.).

Plaintiff concedes that he does not have a claim against Defendants in their official capacities (Doc. #34 at 8).  He protests, however, that qualified immunity is improper because Defendants' conduct violated clearly established constitutional rights (Id. at 9-14). He also alleges that Defendants failed to provide timely medical care after the incident (Id. at 13).

In their Reply, Defendants insist that they are entitled to qualified immunity (Doc. #38 at 2-3).  They also argue that Plaintiff did not assert a medical claim in his Complaint so his contentions should be disregarded (Id. at 5).

**II. Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995).

Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322-23.  Rule 56(e) compels the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere

allegations or denials of [the party's] pleading."  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party.  <u>Anderson</u>, 477 U.S. at 249.  Summary judgment is warranted if the evidence is "merely colorable" or "not significantly probative."  <u>Id.</u> at 249-50.

**III. Factual Background**

On July 11, 2004, around 11:00 a.m., Defendants Post and Kim, City of Phoenix police officers, were patrolling the Krohns West City Housing Project.  They saw Plaintiff outside the projects in an area where drugs were frequently sold and where a No Trespassing sign was posted.  They believed Plaintiff was loitering, but he asserted that he was visiting with a friend named Charles who was parked in front of the projects.  According to Plaintiff, Charles had put some ice in Plaintiff's mug and then said he was going to liquor store for more ice, and Plaintiff decided to wait under a tree.  He saw a film cannister and picked it up.  The officers, after a minute of observation (Plaintiff says it was ten seconds), did not believe that Plaintiff had any reason for being there, so they drove near where he was standing.

Here, the version of events diverge sharply.  Defendants assert that Post began to talk to Plaintiff through the rolled-down window and then got out of his car to ask Plaintiff if he lived at the projects.  Plaintiff reached behind his back, and Post reached for his gun because he thought Plaintiff might have a weapon.  But when Plaintiff dumped the contents of the film canister into his mouth, Post ordered him to stop.  Plaintiff backed away, flailing his arms and continuing to chomp on the contents.  By that time, Kim was out of the car.  Post lunged at Plaintiff, and they tripped over the roots of a tree and fell on the ground.  Kim assisted in handcuffing Plaintiff, which was accomplished despite his resistance.  During the struggle, Plaintiff hit his head on something that caused a one-inch laceration on his right cheek.

In contrast, Plaintiff asserts that Post got out of his car to talk to him, and Plaintiff said he did not want to talk.  When Plaintiff started to turn around pour the ice, he heard Post said "he's swallowing something" and then Post ran up and knocked him to the ground.  Post then started choking Plaintiff, telling him to spit out what he had swallowed.  Plaintiff replied that he had some ice cubes that he swallowed.  Post kept choking him and started hitting his head on the grass.  Plaintiff asked what he was doing, and Post told him to spit out what he had.  Plaintiff said he had nothing.  Post ordered him to put his hands behind his back, and Plaintiff complied.  He was handcuffed.  Post asked Plaintiff to spit out what was in his mouth, and Plaintiff responded that there was nothing.  Post then "forearmed his head into the curb," which caused the laceration on his right cheek (Doc. #34 at 4).  Plaintiff asked why he did that, as he was bleeding.  Post repeated the motion, and Plaintiff's right eye hit the edge of the curb.

Plaintiff further asserts that Kim then dragged him ten feet to purposely put him in an ant bed.  Kim took Plaintiff's identification to the police car, while Post watched Plaintiff.  When Plaintiff asked to roll out of the ant bed, Post replied that if he moved, he would shoot him with his Taser.  Post also told him that he hoped that the "black critters would eat his ass up" (Doc. #34 at 5).  When Kim returned, both officers then taunted him by saying that he had committed burglaries, rapes and molested children.  Plaintiff responded that they were out of line by making false accusations.  Plaintiff asked them to loosen his cuffs because his hand was numb, but Kim said they were not too tight.  Plaintiff alleged that the tight cuffs caused nerve damage to two fingers in his left hand.

Plaintiff asserts that he lay in the ant bed for two minutes and was bitten twenty times all over his body.  Defendants deny that they deliberately placed Plaintiff in an ant bed, and assert that they did not know until Plaintiff told them after they finished cuffing him.  Then, they took him to a faucet where Kim washed him down.  Plaintiff claims it was only after Sergeant Carmichael arrived that Post told him to roll out of the ant bed, and Carmichael directed the officers to hose Plaintiff down to remove the grass, dirt and blood before taking him to the jail.

1    According to Plaintiff, the jail refused to accept him and directed the officers to

2 transport him to the emergency room at Phoenix Memorial Hospital.  Defendants imply that

3 Plaintiff was taken to the hospital before any attempts to book him into the jail were made.

4 Plaintiff received sutures under his right eye and was tested for his vision and equilibrium.

5    Defendants assert that during a search of Plaintiff, they found two objects that

6 appeared to be crack pipes, and they confirmed that he was not a resident of the projects nor

7 was he visiting anyone there.  Plaintiff was booked jail on charges of trespassing, resisting

8 arrest, and possession of drug paraphernalia.  Ultimately, he pled guilty to possessing drug

9 paraphernalia.

10 **IV.  Analysis**

11    **A.  Official Capacity Claims**

12    The parties agree that Plaintiff's claims against Post and Kim in their official

13 capacities cannot succeed as a matter of law.  Accordingly, summary judgment will be

14 granted in favor of Defendants on this claim.

15    **B.  Qualified Immunity:  No Constitutional Violation**

16    Defendants assert the defense of qualified immunity because Plaintiff failed to show

17 a violation of a constitutional right by his allegations that Defendants (1) lacked probable

18 cause to arrest him and (2) dragged him in an ant bed and taunted him.  Qualified immunity

19 is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v.

20 Forsyth, 472 U.S. 511, 526 (1985).  A two-step evaluation of qualified immunity requires

21 both a "constitutional inquiry" and the "qualified immunity inquiry."  See Estate of Ford v.

22 Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).  The "constitutional inquiry" asks

23 whether, when taken in the light most favorable to the non-moving party, the facts alleged

24 show that the official's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S.

25 194, 201 (2001).  If so, a court turns to the "qualified immunity inquiry" and asks if the right

26 was clearly established at the relevant time.  Id. at 201-02.

27

28

1

### 1. Probable Cause to Arrest

2      Plaintiff alleged in Count I that his Fourth Amendment rights were violated because

3   Defendants lacked probable cause to arrest him.  Defendants contend that because Plaintiff

4   was convicted of possession of drug paraphernalia, he is barred from raising this claim under

5   Heck v. Humphrey, 512 U.S. 477, 487 (1994).  Plaintiff responds that the Court should

6   decide the probable cause issue because the charges of trespassing and resisting arrest were

7   dismissed when he pled to possession of drug paraphernalia.

8      In Heck, the Supreme Court announced a "favorable termination rule" for § 1983

9   actions that also challenge the validity of confinement, as follows:

10
> In order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by action whose unlawfulness would
11
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by
12
> executive order, declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance of a writ of
13
> habeas corpus . . .

14   Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Without such a showing of a "favorable

15   termination," a cause of action under § 1983 does not accrue.  Id. at 489.  Thus, if a

16   judgment in favor of the plaintiff on his § 1983 claim would necessarily imply the invalidity

17   of his conviction or sentence, the claim must be dismissed.  Id. at 487.

18      The Ninth Circuit Court of Appeals has found that "[t]here is no question" that the

19   "favorable termination" rule bars a convicted plaintiff's claim that defendants lacked

20   probable cause to arrest and that defendants brought unfounded charges.  Smithart v. Towery,

21   79 F.3d 951, 952 (9th Cir. 1996).  Wrongful arrest and bringing false charges could not have

22   occurred unless the plaintiff were innocent of the crimes for which he was convicted.

23   Guerrero v. Gates, 442 F.3d 697, 703 (9th Cir. 2006).  Plaintiff's claim that Defendants

24   lacked probable cause to arrest him implies that his conviction for possession of drug

25   paraphernalia is invalid.  Plaintiff has not shown that his conviction has been invalidated, and

26   his claim is therefore premature.  This claim will be dismissed without prejudice.

27

28

1

### 2.  The Ant Bed and Taunting

2        To succeed on a Fourth Amendment claim of excessive force, Plaintiff must show that
3   the officers' action were objectively unreasonable under the circumstances.  Graham v.
4   Connor, 490 U.S. 386, 397 (1989).  In Count I, Plaintiff also alleged that the officers used
5   excessive force when they dragged him into an ant bed and taunted him.  Defendants contend
6   that (1) there is no case law establishing that allowing a person in custody to be bitten by ants
7   constitutes excessive force, (2) Plaintiff has not alleged a physical injury because he admitted
8   that the bites were irritating and did not hurt, and (3) a taunt does not violate the Constitution.
9   Plaintiff responds that the issue is whether Defendants acted maliciously, which Plaintiff
10  intends to prove to a jury to justify an award of punitive damages.

11       First, the Court rejects Defendants' contention that there must be case law establishing
12  that allowing a person in custody to be bitten by ants constitutes excessive force.  The
13  Supreme Court has found that officials can still be on notice that their conduct violates
14  established law even in "novel factual circumstances."  Hope v. Pelzer, 536 U.S. 730, 741
15  (2002).  In Watts v. McKinney, 394 F.3d 710, 712 (9th Cir. 2005), the Ninth Circuit rejected
16  an appeal of the denial of qualified immunity, finding that a reasonable officer would have
17  known that kicking a helpless prisoner in the genitals was cruel and unusual.  The court
18  stated that "[t]he Supreme Court did not need to create a catalogue of all the acts by which
19  cruel and sadistic purpose to harm another would be manifest; but if it had, such an act would
20  be near the top of the list."  Id.  Although there is no need for Plaintiff to cite a case holding
21  that excessive force is shown when an officer deliberately puts a handcuffed person in an
22  area infested with ants, the Court recognizes that these factual circumstances are not entirely
23  novel.  See McCray v. Holt, 777 F. Supp. 945, 947 (S.D. Fla. 1991) (forcing occupants of
24  stopped vehicle to stand in an area infested with red ants while handcuffed and unable to
25  defend themselves against painful bites was sufficient to state claim for emotional distress
26  under Florida law).  Purposefully dragging someone into an ant bed to be bitten might not
27  be near the top of the Supreme Court's list but the conduct definitely would make the list.

28

Second, the Court is not persuaded by Defendants' contention that Plaintiff must have suffered a *physical* injury to establish a constitutional violation. It is true that an injury is required for a constitutional tort. <u>Resnick v. Hayes</u>, 213 F.3d 443, 449 (9th Cir. 2000). Although a physical injury is more common than not in situations involving excessive force, a physical injury is not necessarily required. In <u>Robinson v. Solano County</u>, 278 F.3d 1007, 1014 (9th Cir. 2002) (en banc), the Ninth Circuit found that it was unreasonable for officers to point a gun at close range at the head of an unarmed misdemeanor suspect who was approaching the officers peacefully. The court of appeals cited other circuit court decisions which found that pointing a gun constituted excessive force, and the court of appeals expressly agreed with a Fifth Circuit's statement that "[a] police officer who terrorizes a citizen by brandishing a cocked gun in front of that civilian's face may not cause *physical* injury, but he has certainly laid the building blocks for a section 1983 claim against him." <u>Id.</u> at 1014-15 (citing decisions of the Third, Fifth, Seventh and Ninth Circuits). Although allowing someone to be bitten by ants is not the equivalent of pointing a deadly weapon at someone's face, the question is not whether Plaintiff suffered a physical injury. Rather, the question is whether allowing him to be bitten by ants was objectively reasonable under the circumstances. <u>See</u> <u>Graham</u>, 490 U.S. at 396-97.

Third, Defendants contend that Post's taunt to have the " black critters eat his ass up" does not amount to a constitutional violation because they are mere words. Despite the facial appeal of an argument that mere words are insufficient, Defendants have parsed Plaintiff's claim too finely. He alleged that he was purposely dragged into the ant hill *and* then taunted about being bitten while he lay there. In combination, these allegations, construed in a light most favorable to Plaintiff, establish a Fourth Amendment violation.

## C. Qualified Immunity: No Clearly Established Right

Defendants contend that they are entitled to qualified immunity because they reasonably believed that the amount of force they used was reasonable. According to Defendants, Plaintiff admitted that he was chewing something in his mouth and that he was backing away from Post. They had probable cause to arrest Plaintiff, as he was attempted

to swallow drugs and flee, so tackling him and banging his head on the curb in the course of the arrest was reasonable, or so Defendants posit.  Although the Court understands Defendants' stance, their argument ignores the requirement that the facts be construed in Plaintiff's favor.  Under Plaintiff's version of events, Plaintiff refused to talk to Post, and Post then repeatedly banged his head on the ground to get him to spit something out.  And, after Plaintiff was handcuffed, Post allegedly "forearmed" his head into the curb when Plaintiff said he had nothing in his mouth.  Qualified immunity is not warranted.

**IT IS ORDERED:**

(1)  Defendants' Amended Motion for Summary Judgment (Doc. #24) is **granted in part and denied in part**.

(2)  The official capacity claims against Defendants Post and Kim are **dismissed** with prejudice.

(3)  The part of Count I alleging that Defendants lacked probable cause to arrest Plaintiff is **dismissed** without prejudice.

DATED this 16th day of November, 2006.

_____
James A. Teilborg
United States District Judge